CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 2, 2018

LETTER TO COUNSEL

RE: *Maurice Daniels v. Commissioner, Social Security Administration*;[1]
Civil No. SAG-17-2993

Dear Counsel:

On October 11, 2017, Plaintiff Maurice Daniels petitioned this Court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits ("DIB"). [ECF No. 1]. I have considered the parties' cross-motions for summary judgment. [ECF Nos. 19, 23]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405. This letter explains my rationale.

Mr. Daniels protectively filed his claim for DIB on April 15, 2013, alleging a disability onset date of May 1, 2011. (Tr. 16, 302-03). His claim was denied initially and on reconsideration. (Tr. 142-45, 147-48). A hearing was held on November 19, 2015, before Administrative Law Judge ("ALJ") Laronna Harris. (Tr. 72-106). On August 9, 2016, a supplemental hearing was held before ALJ Harris. (Tr. 107-17). Following the hearings, the ALJ determined that Mr. Daniels was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 13-29). The Appeals Council denied Mr. Daniels's request for review, (Tr. 1-5), so the ALJ's 2016 decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Mr. Daniels suffered from the severe impairments of "degenerative disc disease of the cervical and lumbar spine, affective disorder, and anxiety." (Tr. 19). Despite these impairments, the ALJ determined that Mr. Daniels retained the residual functional capacity ("RFC"):

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

to perform medium work as defined in 20 CFR 404.1567(c) except, in an eight-hour work day, the claimant can sit for six-hours, stand for four-hours, and walk for six-hours. This claimant can frequently handle, feel, finger, push, and pull with the right, dominant, upper extremity. The claimant can operate foot controls with his bilateral lower extremities frequently. He can climb ramps or stairs frequently and can climb ladders, ropes, or scaffolds occasionally. The claimant can stoop frequently, knee [sic] occasionally, crouch frequently, and crawl occasionally. He can frequently work at unprotected heights or around moving mechanical parts. He can frequently work in an environment where there is humidity, wetness, extreme heat, or vibrations. He can occasionally operate a motor vehicle; he can occasionally work in an environment with dust, odors, fumes, pulmonary irritants, or extreme cold. The claimant can work in an environment where there is loud noise such as heavy traffic. [He] can perform work that requires understanding, remembering, and carrying out very short, simple instructions. He can interact appropriately with the general public, supervisors, co-workers, or peers frequently.

(Tr. 21). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Daniels could perform his past relevant work as a warehouse worker, as actually and generally performed. (Tr. 27-29).

Mr. Daniels essentially presents two arguments on appeal: (1) that the ALJ failed to conduct a proper two-step pain analysis; and (2) that the ALJ's hypothetical to the VE was inadequate. [ECF No. 19-1 at 8-10].

First, Mr. Daniels argues that the ALJ incorrectly analyzed his complaints of pain. Because pain itself can be disabling, "it is incumbent upon the ALJ to evaluate the effect of pain on a claimant's ability to function." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *see also Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980). In this Circuit, it is well-established that an ALJ must follow the two-step process for assessing complaints of pain as set forth in *Craig*, 76 F.3d at 594-96. *See, e.g.*, *Ketcher v. Apfel*, 68 F. Supp. 2d. 629, 652-53 (D. Md. 1999). First, the ALJ must determine whether there is objective evidence showing the existence of a medical impairment that reasonably could be expected to cause the pain the claimant alleges he suffers. *Craig*, 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). Second, the ALJ must evaluate the "intensity and persistence of the claimant's pain, and the extent to which it affects the claimant's ability to work." *Id*. at 595. The second step requires the ALJ to evaluate the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating or aggravating factors; (4) any medication the claimant has taken to alleviate his symptoms; (5) other treatment the claimant has received to alleviate his symptoms; (6) measures the claimant has taken to alleviate his symptoms; and (7) any other factors due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). Importantly, in assessing the intensity and persistence of a claimant's pain, claims of disabling pain may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of his pain. 20 C.F.R. §§ 416.929(c)(2), 404.1529(c)(2).

The ALJ found that Mr. Daniels suffers from medical impairments reasonably expected to cause pain, namely his degenerative disc disease of the cervical and lumbar spine, resulting in

back and neck pain. (Tr. 22-27). She noted Mr. Daniels's complaints of "pins and needles in his right, dominant hand caused by a remote gunshot wound and surgery," "bilateral leg pain coming from his lower back," neck pain of an 8/10, upper back pain of an 8/10, lower back pain of a 10/10, and that "his back hurts every day, all day." (Tr. 22-24). However, the ALJ questioned the intensity, persistence, and limiting effects of the pain. *Id.* The ALJ found that Mr. Daniels's statements regarding his impairments and their impact on his ability to work were not credible to the extent they were inconsistent with the RFC. (Tr 22-27).

After review of the ALJ's decision, I find that the ALJ did not rely solely on the existence or nonexistence of objective medical records in judging the intensity and persistence of Mr. Daniels's pain. Rather, she also evaluated the evidence submitted by Mr. Daniels regarding his activities, the treatment he follows, including his pain medications, and his own testimony. (Tr. 22-27). The ALJ noted that Mr. Daniels had not undergone any orthopedic treatment from October, 2012, through March, 2015, and that he stopped his mental health treatment in August, 2013. (Tr. 23). She noted that Mr. Daniels received income in 2012, suggesting some work activity after his alleged disability began. *Id.* The ALJ discussed the results of x-rays from May, 2011, confirming "mild degenerative disc disease of the cervical spine and spurring at L4 and L5 in his lumbar spine," as well as MRIs from August and October, 2011, confirming a mild disc bulge at C3-4 and C5-6 of his lumbar spine and a disc protrusion at L5-S1 deviating the left S1 nerve root. *Id.*

The ALJ also discussed the notes from Dr. Morris Lasson, Mr. Daniels's treating psychologist, and from Dr. Kevin McGovern, one of Mr. Daniels's treating orthopedists. (Tr. 24-27). Dr. Lasson confirmed Mr. Daniels's treatment between 2009 and 2013 for depression and anxiety, but noted that Mr. Daniels would still be able to "follow simple instructions and could perform repetitive tasks without supervision." (Tr. 25-26). Dr. McGovern concluded, based on the Fourth Edition of the "American Medical Association Guide to Evaluating Permanent Injury," that Mr. Daniels had 19% overall impairment to his neck and 33% overall impairment to his lower back. (Tr. 27). The ALJ also noted that an orthopedic specialist, Dr. Darioush Nasseri, examined Mr. Daniels in August, 2013, and found that Mr. Daniels "showed normal ambulation and normal range of motion" in his cervical spine and upper extremities but a "decreased lumbar spine range of motion with pain." (Tr. 24). Dr. Nasseri concluded that Mr. Daniels could perform sedentary work without frequent bending, squatting, or kneeling, and that he could not lift more than 40 pounds frequently. *Id.* Finally, the ALJ noted Mr. Daniels's testimony about his daily activities, including his ability to do the laundry, drive a car, do his own dishes, and leave his home multiple times a week. (Tr. 22-23). She also noted that, beyond Dr. Lasson's statements confirming his treatment until August, 2013, Mr. Daniels did not have mental treatment notes to establish anything more severe or to show that his treatment was not working. (Tr. 25). All of these factors, coupled with Mr. Daniels's testimony regarding his activities and the ALJ's observations from the hearing, provide substantial support for the ALJ's conclusions. Accordingly, there is substantial evidence to support the ALJ's analysis of Mr. Daniels's allegations of pain.

Mr. Daniels also argues that the ALJ erred "by ignoring a complete hypothetical that included all aspects of the Plaintiff's exertional and non-exertional work related limitations." (ECF No. 19-1 at 8]. The ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999), and need only pose

those that are based on substantial evidence and accurately reflect a claimant's limitations. *See Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988). The ALJ engaged in an extensive chronology of Mr. Daniels's medical examinations, including all of his physical and mental health evaluations. (Tr 21-27). With that summary, the ALJ determined that Mr. Daniels's impairments limited him to medium work except, in an eight-hour work day, he can sit for six-hours, stand for four-hours, and walk for six-hours, and that he can interact appropriately with the general public, supervisors, co-workers, or peers frequently. (Tr. 21). Specifically, the ALJ stated that she accepted the physical assessments from the state agency physicians, and that she assigned great weight to orthopedic expert Dr. John Axline's opinion, based on a review of the entire evidence of record, confirming only mild degenerative disc disease and noting Mr. Daniels's ability to "frequently climb ramps and stairs, stoop, and crouch;…occasionally climb ladders, ropes, or scaffolds, kneel, or crawl." (Tr. 24-27). She also noted Dr. Axline's statement that Mr. Daniels "was 'ok' to perform all activities of daily living independently." (Tr. 25). Based upon the evidence cited by the ALJ, it appears that the restriction to medium work was based on substantial evidence and accurately reflected all of Mr. Daniels's credible limitations. Therefore, the ALJ's hypothetical, which included these limitations, was not deficient.

For the reasons set forth herein, Plaintiff's motion for summary judgment, [ECF No. 19], will be DENIED and Defendant's motion for summary judgment, [ECF No. 23], will be GRANTED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge